**Jeffrey Jay RUTGARD, Plaintiff,**

v.

**Richard HAYNES, Defendant.**

**No. Civ. 98–0524TW(JFS).**

United States District Court,
S.D. California,
San Diego Division.

April 27, 1999.

and Mike Leone appeared on behalf of Defendant. Attorney William Cohan appeared on behalf of Plaintiff. Having read the written submissions of the parties, heard argument of counsel, and being fully advised, the Court FINDS and ORDERS as follows:

## II.

## BACKGROUND

Defendant seeks, by subpoena, to obtain the files and records of Attorney Gene E. Royce and his law firm of Royce, Grimm, Vranjes, McCormick & Graham, LLP, relating to Royce's representation of Plaintiff during the malicious prosecution suit in which both the plaintiff and defendant in this case were sued for having previously filed an action against Plaintiff's former employees for antitrust violations. Mr. Royce, who does not represent Plaintiff in the present action, contacted Defendant's counsel and indicated he would produce some of the documents requested, but requested a retainer to redact other documents as he felt appropriate. Defendant's counsel allegedly replied that such a fee would not be required if this Court ordered all documents produced. Mr. Royce then stated that he would wait for this Court's ruling before he produced any documents. Plaintiff presents a limited objection to the motion, arguing that only some of the documents relating to the present action should be produced. This Court finds that all of the documents relating only to the defense of the malicious prosecution suit shall be produced and **GRANTS** Defendant's motion to compel in part as follows.

### ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL [48–1]

STIVEN, United States Magistrate Judge.

## I.

## INTRODUCTION

Defendant's Motion to Compel Production of Files of Attorney Gene Royce in the above-referenced case was heard before Magistrate Judge Stiven in Courtroom E on April 13, 1999. Attorneys Krista Sandler

## III.

## DISCUSSION

### A. Waiver of Attorney–Client Privilege

#### 1. The October 22, 1998 Order.

This Court issued an Order on October 22, 1998, holding that Plaintiff had waived the attorney-client privilege as to both Defendant Haynes and his co-counsel in a prior criminal action from McKenna and Cuneo by filing a suit for malpractice against Haynes. This Court found that when a client sues one

lawyer for malpractice, the attorney-client privilege is waived as to all attorneys involved in the underlying litigation for which that attorney has been sued. *See Pappas v. Holloway,* 114 Wash.2d 198, 202, 787 P.2d·30, 34 (1990).

One of the causes of action Plaintiff states against Defendant is malpractice and negligence during Defendant's representation of Plaintiff during the *criminal suit* in *U.S. v. Rutgard.*[1] Ms. Juanita Brooks of McKenna and Cuneo represented Plaintiff during the criminal suit as co-counsel with Defendant Haynes. In its October 22, 1998 Order, this Court held that by suing Defendant Haynes for committing malpractice during the criminal suit, Plaintiff waived the attorney-client privilege as to both Defendant Haynes, and co-counsel for that same matter, Ms. Brooks.

The issue presently before this Court is somewhat different. The focus here is that Plaintiff is suing Defendant Haynes for negligence, fraud and deceit, and breach of fiduciary duty for alleged misconduct in connection with a *civil antitrust suit* filed against Plaintiff's former employees. Plaintiff was named as a defendant in a malicious prosecution suit brought by the former employees named in the antitrust suit. Attorney Royce was retained to represent Plaintiff during this malicious prosecution suit. Defendant Haynes was a co-defendant in the malicious prosecution action. He was represented by separate counsel. Thus, Defendant and Royce were never co-counsel for Plaintiff, and, as discussed below, Royce represented Plaintiff *after* the alleged misconduct (in connection with the filing of the antitrust suit) occurred, not during the same matter, as was the case in *Pappas* and *Fischel & Kahn v. Van Straaten Gallery, Inc.,* 301 Ill.App.3d 336, 234 Ill.Dec. 773, 703 N.E.2d 634 (1998).

Additionally, in all of the cases considering this issue, the waiver of attorney-client privilege has occurred with respect to *one* underlying case or occurrence, upon which the subsequent malpractice suit is based. In this case, this Court must consider the actions of Plaintiff and his attorneys for *two* underlying cases, rather than one. Accordingly, this Court must consider whether Plaintiff has waived the attorney-client privilege as to communications between himself and Royce during the malicious prosecution case by virtue of now attempting to recover damages from Defendant Haynes for Royce's attorney's fees, and the settlement payment Plaintiff paid to terminate the malicious prosecution case.

### 2. *Communications between Royce and Plaintiff are "at issue" and thus Plaintiff has impliedly waived the Attorney–Client Privilege.*

The attorney-client privilege and work product privilege can be waived by placing protected communications in issue. *See Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Cal.1976); *Pappas v. Holloway,* 114 Wash.2d 198, 787 P.2d 30 (1990); *Fischel v. Van Straaten,* 301 Ill. App.3d 336, 234 Ill.Dec. 773, 703 N.E.2d 634 (1998).

In this case, Plaintiff's claims for damages against Haynes include recovery of fees he paid to Royce to defend the malicious prosecution case, as well as recovery of the amount Plaintiff paid to settle the malicious prosecution case. Defendant argues that since these amounts are in issue, the attorney's files are open to examination in this case. However, in *Jakobleff v. Cerrato, Sweeney and Cohn et al.,* 468 N.Y.S.2d 895, 97 A.D.2d 834 (1983), the court held that when a plaintiff sued her former attorney for malpractice, she did *not* waive the attorney-client privilege as to her present attorney when the defendant attorney impleaded the present attorney on the issue of damages. The court stated:

> To conclude otherwise would render the privilege illusory in all legal malpractice actions: the former attorney could, merely by virtue of asserting a third-party claim for contribution against the present attorney, effectively invade the privilege in ev-

---

1. Plaintiff's Third Amended Complaint has recently been filed with this Court's approval. The focus of Plaintiff's causes of action has shifted to fraud, deceit, and breach of fiduciary duty in several particulars, but the claims are still, in some measure, related to the underlying claim of malpractice in defense of the criminal complaint.

ery case. Such a result would surely contravene the purpose of the privilege, i.e., "to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to public view to his embarrassment or legal detriment."

*Id.* at 898 (citation omitted).

■ This Court agrees with this reasoning, and the many other courts that have held that a party does not place otherwise privileged attorney-client communications "at issue" merely by seeking an award of attorney fees as damages. *See Fischel v. Van Straaten,* 234 Ill.Dec. 773, 703 N.E.2d at 638–39 (discussing cases holding that claim for attorney fees generally does not put attorney-client communications in issue). Had Plaintiff's claims for damages been limited only to recovery of attorney's fees incurred during the malicious prosecution suit, this Court would likely find that Plaintiff had not waived the attorney-client privilege with regard to communications between himself and Royce during that action, and at best, might have ordered a production of time sheets or other time records so as to allow Defendant to have some measure of the reasonableness of those fees (*see Harris Trust & Savings Bank v. American National Bank & Trust Co. of Chicago,* 230 Ill.App.3d 591, 171 Ill. Dec. 788, 594 N.E.2d 1308 (1992)). However, Plaintiff also is attempting to recover the amount he paid to settle the malicious prosecution suit. ˙As discussed below, this claim for damages puts "in issue" the reasonableness of that settlement.[2]

In *Pappas,* as noted above, the court held that when a plaintiff sued a former attorney for malpractice, that plaintiff waived the attorney-client privilege to all attorneys involved in the underlying litigation. *Pappas v. Holloway,* 787 P.2d at 36. In *Fischel v. Van Straaten,* 234 Ill.Dec. 773, 703 N.E.2d at 640, the court explained the *Pappas* holding further, stating, "Where an attorney is re-

tained by a client *subsequent* to any alleged acts of malpractice—i.e., where no issues of proximate cause can arise as to who committed the malpractice, the client has not waived the attorney-client privilege with respect to subsequently retained counsel." (Citations omitted. Emphasis added.)

■ In this case, Attorney Royce was retained by Plaintiff subsequent to any acts of malpractice or other wrongful conduct by Defendant (relating solely to the malicious prosecution case) now alleged by Plaintiff. However, by claiming damages here for the settlement Plaintiff paid in the malicious prosecution action, the "underlying action" during which "issues of proximate cause can arise as to who committed the malpractice" must include both the antitrust case *and* the malicious prosecution case. Consequently, Defendant here reasonably raises the affirmative defense of contributory negligence, alleging that Plaintiff's counsel in the malicious prosecution action, Mr. Royce, could have contributed to Plaintiff's settlement damages by committing negligence in the conduct of his defense of Rutgard in that action. When addressing this issue, the *Fischel* court stated:

> [T]he central question remains whether a reasonable allegation has been made that liability on the [underlying] claim turns on the actions of subsequently retained counsel. How the allegation manifests itself, whether in an affirmative defense or a counterclaim for contribution, is irrelevant; a party is not required to file a counterclaim for contribution in order to raise the intervening acts of others as an affirmative defense. See *Bieter Co. v. Blomquist,* 156 F.R.D. 173, 177 (D.Minn.1994)....

*Fischel v. Van Straaten,* 234 Ill.Dec. 773, 703 N.E.2d at 641.

■ This Court finds that by claiming damages to recover the amount of the settlement of the malicious prosecution case, Plaintiff has waived the attorney-client privilege

---

**2.** It is also noted that the reasonableness of Rutgard's settlement has indirectly been put at issue in Plaintiff's Opposition to Defendant's Motion for Determination of Good Faith Settlement, wherein Plaintiff argues, *inter alia,* that Defendant's settlement amounting to approximately 18% of the total settlement was grossly disproportionate to Defendant's liability, vis a vis Plaintiff here who paid approximately 74% of the total settlement to the plaintiffs in the malicious prosecution action.

between himself and Royce by putting "in issue" the reasonableness of that settlement, and Royce's actions in defending him and recommending that settlement.[3] Similarly, by applying the standards developed in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975), this Court finds that Plaintiff has impliedly waived the attorney-client privilege between himself and Royce. A Plaintiff impliedly waives the attorney-client privilege if the following three conditions are satisfied: "(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Pappas v. Holloway*, 787 P.2d at 36 (citing *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975)).

Plaintiff has asserted the privilege here after filing suit against Defendant *and* claiming damages in the amount of the settlement he paid in the malicious prosecution suit. Second, Defendant has shown that the protected information may be relevant to the element of causation and to his affirmative defense of contributory negligence, as well as on the issue of the reasonableness of the damages claimed. Defendant needs access to materials from the entire malicious prosecution case to defend against the allegation that his alleged negligence during the handling of the prior antitrust suit was in fact the proximate cause of the settlement elected to be paid by Plaintiff in the malicious prosecution suit. Third, application of the attorney-client privilege would deny Defendant access to the relevant information available regarding this aspect of his defense herein. This Court finds that Plaintiff waived the attorney-client privilege with regard to communications between himself and Mr. Royce concerning Royce's defense of the malicious prosecution suit.

**3.** It is noted that Plaintiff had offered to produce those parts of Mr. Royce's file that relate to his assertion of the "advice of counsel" defense in connection with the malicious prosecution action. This Court sees no distinction between the attorney's files pertaining to that issue and other issues or elements of the malicious prosecution action which may shed light of the efficacy and reasonableness of the now challenged settlement.

## B. Waiver of Work Product Privilege

Federal Rule of Civil Procedure 26(b)(3), which establishes the work product doctrine, provides in part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

■ Work product protection is designed to preserve the privacy of attorney's thought processes, and to prevent parties from "borrowing the wits of their adversaries." *Hickman v. Taylor*, 336 U.S. 921, 69 S.Ct. 636, 93 L.Ed. 1083 (1949).

Whether a party has shown a substantial need within the meaning of FRCP 26(b)(3) is ordinarily vested in the sound discretion of the trial judge, who should look at the facts and circumstances of each case in arriving at an ultimate conclusion. To justify disclosure, a party must show the importance of the information to the preparation of his case and the difficulty the party will face in obtaining substantially equivalent information from other sources if production is denied. The clearest case for ordering production is when crucial information is in the exclusive control of the opposing party.

*Pappas v. Holloway*, 787 P.2d at 37 (citations omitted).

■ In this case, Plaintiff is suing Defendant under various causes of action alleging that Defendant was negligent in his representation of Plaintiff in the antitrust case. Plaintiff is therefore trying to recover damages in the amount of the settlement he paid in the malicious prosecution suit, and the attorney's fees he incurred during the malicious prosecution suit. As stated above, by claiming these damages, Mr. Royce's work product may be relevant to the element of causation and to Defendant's affirmative defense of contributory negligence, as well as whether the damages claimed are reasonable. Also as stated above, Defendant needs access to materials from the entire malicious prosecution case to defend against the allegation that his alleged negligence during the antitrust action was in fact the proximate cause of the settlement Plaintiff elected to pay, and Mr. Royce's files are the only source of such information. The Court finds that Defendant has shown both a substantial need for Mr. Royce's ordinary work product and an inability to obtain the information in another way.

Further, the Court finds that Mr. Royce's "opinion" work product is discoverable. "Rule 26(b)(3) on its face protects against the discovery of [opinion] work product. However, exceptions have been made where such information is directly in issue, and the need for its production is compelling ..." *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 931 (N.D.Cal.1976) (citing *Bird v. Penn Central Co.,* 61 F.R.D. 43, 47 (E.D.Pa.1973)).

> [W]hen the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are "work product" ... [and] while Rule 26(b)(3) provides that protection against discovery of the attorney's ... "mental impressions, conclusions, opinions or legal theories" shall be provided, such protection would not screen information directly at issue....

*Handgards v. Johnson & Johnson,* 413 F.Supp. at 932 (citing 4 Moore, Federal Practice, ¶ 26.64[4], at 26–447 (2d. ed.1975)).

The court in *Pappas* found that the mental impressions and opinions of the attorneys involved in the underlying litigation in an attorney malpractice case are an "integral part of the malpractice issue." *Pappas v. Holloway,* 787 P.2d at 38. Defendant raises the affirmative defense of contributory negligence, alleging that Mr. Royce could have contributed to Plaintiff's settlement damages and generation of attorney's fees by committing negligence during his defense of Plaintiff in the malicious prosecution action. While this affirmative defense may not be the exact equivalent of a malpractice suit, Royce's mental impressions and opinions are clearly integral to Haynes' defense.

### C. Waiver by Using Royce as a Witness

■ Additionally, Plaintiff has waived the attorney-client privilege between himself and Royce by indicating the intent to use Royce as a witness. "[A] party may not insist on the protection of the attorney-client privilege for damaging communications while disclosing other selected communications because they are self-serving. Voluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communications about the same subject." *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. at 929 (citation omitted).

Plaintiff's counsel informed the Court that Plaintiff intends to call Mr. Royce as a percipient witness. This Court is unable to conclude that Mr. Royce will be able to testify about the malicious prosecution case without commenting on why he believes Haynes is liable for the settlement paid by Plaintiff without relying in some measure on privileged information from his files. In order to effectively cross-examine Mr. Royce, Defendant will need to know upon what information Mr. Royce's conclusions and opinions are based. The documents in Mr. Royce's file will provide Defendant with this information.

### D. Pending Motions Affecting the Relevance of this Information

Currently pending before this Court is a motion by Defendant for Determination of Good Faith Settlement. Defendant has moved this Court to make the affirmative

determination that Defendant engaged in good faith when he entered into his settlement with the plaintiffs named in the malicious prosecution action. Also pending before the district court are Defendant's motions for summary judgment, or partial summary judgment. This Court notes that the decisions in one or both of these pending motions may moot the need for the information Defendant is seeking.

This Court prefers to uphold the protections of the attorney-client and work product privileges if at all possible. Since the information currently in issue may not be relevant in light of the pending decisions facing this Court and the district court, this Court orders that Mr. Royce's files shall not be produced until rulings upon the motions currently pending before this Court and the district court have been issued, and it is clear that the information currently sought by Defendant is still relevant to this action.

## IV.

### CONCLUSION

Plaintiff's current claim that Defendant's negligence resulted in his damages of legal fees and settlement payments to defend against the malicious prosecution suit places the adequacy of Mr. Royce's representation and the reasonableness of his fees in issue. One significant way Defendant can defend against these allegations is to present evidence that these damages were not caused by Defendant, but by some aspect of Mr. Royce's representation. The only source through which Defendant can learn this information is through the production of Mr. Royce's files. The Court finds that Plaintiff has waived the attorney-client privilege between himself and Mr. Royce. Defendant also has shown a compelling need for the production of Mr. Royce's work product.

However, this Court also finds that only those documents relating to Royce's defense of the malicious prosecution suit shall be produced. At oral argument, Plaintiff's counsel and Mr. Royce stated to the Court that there were several documents (i.e., personal letters) within the file not related to the malicious prosecution action. This Court finds that those documents not related to the malicious prosecution suit, shall not be produced, and Defendant's motion to compel is limited with respect to any such information. However, all other information relating to the defense of the malicious prosecution suit, regardless of what element of the case on which it focuses, shall be produced, as this Court finds that all such information is relevant and necessary to this action, and as stated above, this information is no longer protected by any privilege.

Accordingly, it is ordered that the law firm of Royce, Grimm, Vranjes, McCormick & Graham LLP shall produce all documents such as: Draft pleadings, motions and declarations, legal research memoranda, witness statements, evidentiary summaries, correspondence and memoranda from its files including attorney-client communications or work product information generated in the course of its activities on behalf of Plaintiff in the underlying malicious prosecution action, which embody, incorporate, reference, analyze or otherwise relate to the conduct of or abilities of counsel or the parties who participated in the antitrust action (including, but not limited to defendant Haynes), the allegations against Plaintiff therein, the evidence presented in support of the allegations against Plaintiff, the evidence considered for presentation in support of Plaintiff's defense, the effect of the status of plaintiff's *criminal case* on the malicious prosecution case, any settlement materials developed on behalf of Plaintiff, any predictions or recommendations to Plaintiff regarding the outcome of the malicious prosecution case, and all billing statements and supporting documentation.

As stated above, Mr. Royce's files shall *not* be produced until rulings upon the motions currently pending before this Court and the district court have been issued, and it is clear that the information currently sought by Defendant is still relevant to this action.

**IT IS SO ORDERED.**